UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CV412-215 |
| THURMAN LEE HOWARD; and FRANK POWERS and HEATHER POWERS, Individually, as Husband And Wife, and as Parents and Next Friends of their minor children B.P., C.P. and E.P., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# ORDER

The plaintiff insurance companies in this declaratory judgment action move the Court for a protective order against discovery sought *not* by their insured, but by third parties suing their insured in a parallel state court case (both the insured and the third parties nevertheless are defendants here). Doc. 44. The third parties oppose and alternatively move to stay this case until the state case is resolved. Doc. 45 at 6.

# I. BACKGROUND[1]

On a summer day in 2011, Thurman Lee Howard drove his car along Interstate 95 in Georgia. He was not having a good day. In fact, he became "road-raged," pulled alongside the Frank Powers family, took out his pistol and fired at least five rounds into their vehicle.[2] Doc. 35-5 at 2-3. Frank "suffered physical injury from flying glass, emotional harm, and physical and mental pain and suffering as a direct and proximate result of . . . Howard's actions." *Id.* His family suffered likewise. *Id.* In state court they sued Howard for, *inter alia*, negligence, assault, and intentional infliction of emotional distress. *Id.* at 7-11 (*Powers I*).[3]

Howard's insurer subsequently filed this case (*Powers II*) in quest of a judgment declaring that its vehicle and umbrella insurance policies do not extend to Howard's intentional (road rage) conduct. Doc. 1, *as*

---

[1] For purposes of this Order the Court is accepting as true the allegations contained in the cited filings.

[2] He later pled guilty to aggravated assault and received a three-year prison sentence. *State v. Howard*, CR120201 (Chatham Cty. Super. Ct. Oct. 31, 2012).

[3] A check of the state court's docket shows that *Powers v. Howard*, STCV1200331 (Chatham Cty. St. Ct. Feb. 2, 2012) is ongoing.

2

*amended*, doc. 35. Actually, there are two insurer plaintiffs[4] but for convenience the Court will refer to just one, and as "State Farm." Howard wants State Farm to defend him in the underlying lawsuit (*Powers I*), but State Farm insists that its policies' intentional-conduct exclusion relieves it of any coverage obligation. Doc. 35 at 8-20.[5]

The parties have been conducting discovery. The Powerses served Fed. R. Civ. P. 30(b)(6) deposition notices on State Farm. They want its designated witness to bring to the deposition things like the policies and procedures that it used to process Howard's coverage claim. Doc. 45 at 3. They also want "[a] complete copy of any and all documentation related to and/or generated in response to claims evaluation and/or policy interpretation utilized in processing . . . Howard's claim in connection with [their case against him]." *Id.* Plus they want "all documentation related to and/or generated in response to claims evaluation and/or policy

---

[4] Plaintiff State Farm Mutual Automobile Insurance Company issued an automobile policy to Howard, doc. 35 at 2, while co-plaintiff State Farm Fire and Casualty Company issued a personal liability umbrella policy to him. *Id.* at 3.

[5] *See also Allstate Ins. Co. v. Thompson*, 2006 WL 2387090 at * 5 (E.D. Pa. July 19, 2006) (road-rage case; insurer had no duty to defend due to insureds' intentional, not accidental, acts); *Ma-Do Bars, Inc. v. Penn-America Ins. Co.*, 2010 WL 5138475 at *7 (N.D.N.Y. Dec. 9, 2010) (declaring no coverage because "liability arising out of the alleged assault and battery . . . and liability arising out of the unlawful and improper service of alcohol . . . are clearly excluded . . . under the policy.").

interpretation utilized in the processing of . . . Howard's claim in connection with [*Powers I*]." Doc. 44 at 4. Hence, State Farm concludes, these defendants want claims adjuster and attorney work product memos, legal billing, etc. *Id.* at 5; *see also* doc. 44 at 3-5 (their entire list of objected-to discovery requests).

State Farm insists that such "claims handling" materials are irrelevant and violate various privileges. Doc. 44. The issue here, it contends, is "whether or not there is coverage under the policies" (*id.* at 10) and *not*, for example, what its adjusters and lawyers may have analyzed in response to Howard's coverage claim. *Id.* at 9-10. That is, the Powerses seek attorney-client and work-product privileged documents that Rule 26(b)(1) does not permit. *Id.* at 10-11. The Powerses disagree; but if State Farm prevails here, they seek to stay this case pending resolution of *Powers I*. Doc. 45 at 6.

## II. ANALYSIS

### A. Protective Order

A couple of preliminary notes help frame the analysis here. First, State Farm seeks a protective order from discovery sought *not* by its insured (Howard), but from third-party claimants (the Powerses), who

are otherwise strangers to the insurance contract. What the Powerses want is typically pursued by an *insured* suing his insurer for bad faith and negligent claims handling, if not also for breach of the policy contract. *See International Indem. Co. v. Saia Motor Freight Line, Inc.*, 223 Ga. App. 544, 546 (1996) (liability insurer could be ordered to produce its entire claims file in discovery on *insured's* bad faith claim, where all correspondence between insurer and its counsel was excluded and insurer did not contest relevancy of material requested); *Mosley v. American Home Assur. Co.*, 2013 WL 6190746 at * 22 (S.D. Fla. Nov. 26, 2013); BAD FAITH ACTIONS LIABILITY & DAMAGES § 10:28 (2d ed. Sept. 2013) ("Insurance bad faith cases are won or lost on the contents of the insurer's claims files. Insurance claims personnel are voracious note writers, and their files sometimes contain the most amazingly incriminating statements."). They thus lack Howard's standing,[6] for

---

[6] "In Georgia, absent an action for bad faith vested in the insured following an excess verdict and an assignment of such action to the plaintiff, an injured plaintiff has no right to a bad faith action against the tortfeasor's insurer, and in a case in which a party injured in a motor vehicle accident brought suit against the tortfeasor's insurer for bad faith refusal to settle when settlement negotiations with the insurer broke down, the court held that the trial court properly granted the insurer's motion to dismiss for lack of standing. *Richards v. State Farm Mut. Auto. Ins.* Co., 252 Ga. App. 45, 555 S.E.2d 506 (2001)." 1 HANDLING MOTOR VEHICLE ACCIDENT CASES 2D § 5:24 (Sept. 2013); *see also Tiller v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5878452

5

example, to pursue a bad-faith claim. In no small part that drives the relevancy determination needed to resolve State Farm's motion.

Nevertheless, the Powerses are parties in this case -- State Farm brought them here -- so they are entitled to conduct discovery. Yet the core issue here is different than in *Powers I*. There the issue is whether Howard is liable to the Powerses for shooting at them (the civil assault and related claims raised in the *Powers I* complaint). Here (*Powers II*), it is whether there exists a bona fide controversy over whether Howard's conduct is negligent (covered by State Farm's policies) or intentional (not covered). *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Pfiel*, 710 N.E.2d 100, 103 (Ill. App. 1999) (existence of a bona fide controversy over whether an insured's conduct alleged in an underlying tort case is negligent or intentional renders premature a declaratory judgment action to determine liability coverage until the controversy is resolved in the underlying case).

Finally, and unsurprisingly, there is no claim that State Farm did not immediately investigate this case in anticipation of imminent litigation. That is important because the work product doctrine typically

---

at * 3 (11th Cir. Nov. 4, 2013) (applying *Richards* and noting third-party beneficiary exceptions to the *Richards* standing doctrine).

does not protect documents from discovery unless they are prepared in *anticipation* of litigation, and since not every claim is expected to result in litigation, the privilege is not automatically conferred upon insurer claims files.[7] State Farm undoubtedly generated its investigative file in the face of highly anticipated litigation; rare is the individual who would not in some way retaliate after having his family shot at.

It follows that enabling a stranger to the contract (the Powerses, who point to no assignment of any claim from Howard against State Farm) to rake through the work-product/attorney communications portion of State Farm's claims file is not warranted under Rule 26(b)(1). Recall, too, that the Powerses were literally at the scene (they were Howard's *victims*), so they alone are in the best position to prove -- via direct testimony -- what Howard did to them that day. State Farm's claims file likely bears only hearsay-based recitations, as gathered by an

---

[7] Courts are reluctant to declare as "work product" the routine "file investigation" of each claim, especially those portions of a claims file generated before a decision is made to investigate in bona fide anticipation of litigation. *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 586 (S.D. W. Va. 2002) (documents protected after date when "initial investigation by the claims adjuster revealed circumstances indicating that the loss was caused by arson and the claim was routed to the senior representative for further investigation"), *cited in Welle v. Provident Life and Accident Insurance Company*, 2013 WL 6020763 at * 3 (N.D. Cal. July 31, 2013).

investigator, if not also attorney work product,[8] though it's conceivable that it could contain a direct admission from Howard, if not third-party eyewitness statements.

---

[8] It's been said that insurers in this situation have *no* duty to investigate. They are free simply to examine the underlying tort claim and categorically determine that their policy provides no coverage:

> [T]he liability insurer's decision not to defend is a result of comparing the claimant's allegations and the known facts with the terms of the policy. So long as coverage is arguably available for the claim, the insured must be defended. If coverage is not even arguable, the absence of a duty to defend is so clear as to be a matter of law. There is thus only a categorical inquiry by the liability insurer before it decides to defend its insured or not. No evaluation or negotiation of the claim is required. A duty to investigate is ordinarily not required but is instead permitted where the claimant's allegations do not arguably trigger coverage but the known facts arguably do.

1 HANDLING MOTOR VEHICLE ACCIDENT CASES 2D § 5:24 (July 2013) (footnotes omitted).

It thus was *somewhat* savvy of the Powers to allege, in *Howard I*, simple negligence *plus* intentional misconduct. *See* doc. 35-5 at 5-10. Alleging only intentional misconduct risked removing a deep pocket (Howard's insurer, who would be apt to disclaim coverage for intentional conduct); *see also supra* n. 2 (Howard is in prison, where most are presumed penniless). Yet at the same time, the facts the Powerses do allege establish clear, intentional (not negligent) conduct. How could aiming and firing one's gun at others *not* be intentional? Conversely, how could a jury rationally find that to be merely negligent conduct?

Plenty of mental friction undoubtedly arises when pleading intentional conduct facts while simultaneously alleging facts that support only negligence. *See*, for that matter, *State Farm Insurance Co v Trezza*, 469 N.Y.S.2d 1008, 1012 (Sup. 1983) (NY law) (if an insurer believes that a complaint "has been drafted in bad faith and designed solely to bring an insurer into a case," the insurer can institute a declaratory judgment action against the claimant "to test the factual allegations of the complaint in the underlying action," and the court can expedite discovery; if "such discovery supported the dismissal of those allegations of the underlying complaint upon which the insurer's duty to defend was predicated, an order so providing should then be entered. Such an order would collaterally estop the claimant from pursuing the

8

For that matter, courts typically don't order such work product disclosures (i.e., information beyond gathered facts) even for *insureds*. *See, e.g., Chambers,* 206 F.R.D. at 590 (insurance representative's refusals to answer questions, during deposition in insured's action against homeowner's liability insurer, arising out of its failure to pay claim after insured's house was destroyed by fire, were proper if insured's questions inquired into thoughts, opinions, and mental impressions of representatives about insured's loss and claim, as they were protected by work product doctrine); *compare Carver v. Allstate Insurance Company,* 94 F.R.D. 131, 135-36 (S.D. Ga. 1982) (documents emanating from claims representative's investigation were prepared "in anticipation of litigation," as at this point in investigation the likelihood that litigation would ensue was substantial, and thus those documents fell within purview of work-products rule; however, standard reports referred to as "diary sheets" and "result forms" prepared at time when prospect of litigation was still inchoate could not be said to have been "prepared in anticipation of litigation" and were discoverable).

---

insured on the dismissed causes of action, since the claimant is a party to the declaratory judgment action, and would prevent the insurer's duty to defend from becoming interminable.") (quotes and cite omitted); 2 INSURANCE CLAIMS AND DISPUTES § 8:3 (6th ed. Apr. 2013).

9

To the extent that State Farm is objecting to any Rule 30(b)(6) document request aimed at eliciting what facts it has gathered as a matter of routine claims investigation in this case, its motion for a protective order is denied. Conversely, the Court agrees with State Farm[9] and grants it protection against any demand to produce documents containing its agents' and attorneys' assessment of the strength of Howard's coverage claim against it, as well as other mental-impression based writings.

The Powerses raise a waiver argument -- that by filing this declaratory judgment action and disclosing (in discovery) that a State Farm representative is likely to have otherwise discoverable information, State Farm waived its privileges. Doc. 45 at 4-5. That implicates the "sword and shield doctrine," where a party raises a claim or defense that will necessarily require proof by way of a privileged communication. When that happens, he cannot (upon a discovery request) block a communications disclosure as privileged. An example is where a client calls his attorney to testify on the issues necessary to establish his claim.

---

[9] *See* doc. 44 at 8 (contending that the Powerses "essentially [seek] the complete defense file for Mr. Howard in the underlying tort case."); *id.* at 9 (arguing that information on how State Farm processed -- thus evaluated -- Howard's claim is "unrelated to the issues in this case, which involve insurance coverage questions.").

There he obviously waives his right, in pretrial proceedings, to insist that the matter is privileged. *Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010) ("a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged.").

The underlying dynamic in those cases: One waives a privilege by raising, for example, an affirmative defense that makes that party's intent and knowledge of the law relevant. *The Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37 (D.D.C. 2009). The Powerses come nowhere close to showing that State Farm's declaratory quest is directly dependent upon information contained within privileged materials. *See Levesque*, 263 F.R.D. at 667; *Estate of Cornwell ex rel. Fuller v. American Federation of Labor*, 197 F.R.D. 3 (D.D.C. 2000); *United States v. Exxon Corp.*, 94 F.R.D. 246 (D.D.C. 1981); 8 WRIGHT & MILLER: FED. PRAC. & PROC. CIV. § 2016.6 n. 20 (3d ed. Apr. 2013) (collecting cases). In proving *here* that Howard acted intentionally, State Farm will be relying *not* upon its own direct knowledge or attorney's mental impressions, but on facts and evidence of those facts that it rounded up from *third parties*

like any shooting witnesses, including (possibly) Howard and the Powerses themselves.[10]

The Court has been articulating general limitations and principles and has reached only State Farm's core objections. There is a multi-page list of others that remain. *See* doc. 44 at 3-5. Yet, other than a generic assertion that counsel met and "conferred" in a "good faith effort" to resolve their discovery dispute, doc. 44-7 at 1,[11] the parties' briefs strongly suggest that at best they superficially conferred, and apparently did so without taking into account the above-guiding principles. Since the remaining objections are spun mostly out of the same thread, the Court grants the remainder of State Farm's motion without prejudice to

---

[10] This also negates, to the extent the Powerses raise it, the "substantial need" exception to the work product rule, under which materials are nonetheless discoverable if the requesting "party shows it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3); *see Welles*, 2013 WL 6020763 at * 3.

[11] Under Local Rule 26.4 and Fed. R. Civ. P. 37(a)(2), parties seeking a protective order or to compel discovery must certify that a good faith effort has been made to resolve the dispute before coming to court. Their duty to confer must also be meaningful. *Scruggs v. International Paper Co.*, 2012 WL 1899405 at *1 (S.D. Ga. May 24, 2012). More than a "we met and talked" certification is needed, though every case is different. *See DirecTV, LLC v. Shirah*, 2013 WL 5962870 at * 2 n. 3 (S.D. Ga. Nov. 6, 2013) (collecting cases); *Jackson v. Deen*, 2012 WL 7198434 at * 1 (S.D. Ga. Dec. 3, 2012) ("[n]either face-to-face nor telephone contact is necessarily essential to the 'good faith' certification requirement in every case. Sometimes letters, emails, or faxes will suffice. But under the circumstances here, the Court is persuaded that more is required than a mere back and forth salvo of papers.").

the Powerses' right to move to compel. However, the Court stays the Rule 30(b)(6) depositions until the parties meet, within 14 days after the date this Order is served, and *meaningfully* confer on the remaining objections in light of the foregoing principles. Should they fail to resolve their differences, the Powerses may, within 14 days thereafter, move to compel compliance with a new Rule 30(b)(6) document list. State Farm may respond within 11 days thereafter.

**B. Motion To Stay**

The Powerses move to stay this case if the Court grants State Farm's protective-order motion.[12] Doc. 45 at 6. The Court is granting State Farm's motion. However, the Powerses fail to explain what such a stay would achieve. Again, they are *not* the insured here, only third-party claimants. And assuming that in *Powers I* they prevail against Howard before this case is resolved, there is no guarantee that the *Powers I* verdict and judgment would assist resolution of this case.

Put another way, unless the Powerses represent their intent to present to this Court a *Powers I* judgment supported by a special jury

---

[12] This goes to the Court's discretion. *See Essex Ins. Co. v. Gilbert Enterprises, Inc.*, 2013 WL 5347435 at * 7 (D.R.I. Sept. 23, 2013) (advising district judge to deny insured's motion to stay insurer's action for judgment declaring noncoverage based on policy exclusion for liquor liability, as well as a declaration that it is not obligated to defend or indemnify against claims arising out of the underlying state tort action).

interrogatory specifying that Howard was merely negligent and did not act intentionally, they will supply nothing to resolve the issue here (whether Howard acted intentionally) and, in turn, State Farm can rest on its policies' exclusion provisions. The Powerses are not making that representation. They understandably would not want to drop their intentional tort claim against Howard in *Powers I*. At the same time, it profits no one to stay this case unless and until *Powers I* can produce a judgment that can be *"res judicata* exploited" (hence, that it is 100% negligence based, and that under a preclusion doctrine, State Farm cannot litigate the intentional conduct issue here).[13]

---

[13] One court points out that:

> when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious. This is the classic situation in which the declaratory relief action should be stayed.

*Corbalis v. Superior Court*, 2008 WL 1801100 at * 3 (Cal. App. 6 Dist. Apr. 22, 2008) (quotes and cite omitted); *see also* 2 Insurance Claims and Disputes § 6:22 (*Binding effect on insurer of a judgment against insured in the underlying action-- Collateral estoppel*) (6th ed. Apr. 2013).

The *Corbalis* factor fits here. Again, in *Powers I* the Powerses allege *both* negligence and intentional conduct. Doc. 35-5 at 5-10. And State Farm's proof of intentional conduct here could prejudice its insured (Howard) in *Powers I*. "These concerns for stepping on the factual issues in the underlying action are, of course, lessened when all the parties to that action are parties to the declaratory judgment and able to litigate the point." 16 COUCH ON INS. § 232:67 (June 2013). But State Farm is *not* named as a party in *Powers I*. *See* doc. 35-5 at 1.

No stay, then, is warranted. *See General Ins. Co. of America v. Clark Mall, Corp.*, 841 F. Supp. 2d 1057, 1062 (N.D. Ill. 2012) (stay of insured's counterclaims against its insurer for breach of contract, bad faith, deceptive trade practices, and fraud pending resolution of underlying case against insured was not warranted in insurer's action seeking declaratory judgment that it had no duty under commercial general liability policy to defend or indemnify insured or its officers and directors in underlying case, where insurer was not party to underlying case, issue in underlying case was whether insured negligently caused fire and made false representations to injured parties, insurer disclaimed coverage on ground that insured intentionally started fire and failed to cooperate in its investigation, and resolution of underlying case would not moot dispute between insurer and insured). The Court thus denies the stay motion until the Powerses can show that this Court can exploit (via *res judicata*) a *Powers I* judgment to resolve this case. Doc. 45 at 6.

---

Nevertheless, no one here has raised the *Corbalis* factor, such as in a stay motion. Again, the Powerses never say why they want a stay, and at most Howard himself alludes to the *Corbalis* factor in his Answer. *See* doc. 15 at 3.

## III. CONCLUSION

Without prejudice to the right to the Powers defendants to move to compel further production, the Court **GRANTS** in part and **DENIES** in part the State Farm plaintiffs' Motion for a Protective Order. Doc. 44. The Court also **DENIES** the Powers defendants' motion to stay this case. Doc. 45 at 6. Meanwhile, the parties must confer, as set forth in Part II(A) above, before any further discovery motions are filed.

**SO ORDERED**, This 27th day of December, 2013.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA